17-1240-ag
Bernard G. McGee v. Securities and Exchange Commission

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

<u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand eighteen.

PRESENT: JOHN M. WALKER, JR.
         DENNIS JACOBS,
                        <u>Circuit Judges</u>,
         KATHERINE B. FORREST,*
                        <u>District Judge</u>.

- - - - - - - - - - - - - - - - - - - - -X

Bernard G. McGee,
         <u>Petitioner</u>,

         -v.-                                    17-1240-ag

United States Securities and Exchange
Commission,
         <u>Respondent</u>.

- - - - - - - - - - - - - - - - - - - - -X

FOR PETITIONER:            Megan K. Thomas, Sugarman Law
                           Firm, LLP, Syracuse, New York.

---

* Judge Katherine B. Forrest of the United States District Court for the Southern District of New York, sitting by designation.

1

**FOR RESPONDENT:**                Robert B. Stebbins, General
                                  Counsel for the Securities and
                                  Exchange Commission (John W.
                                  Avery, Deputy Solicitor,
                                  Theodore J. Weiman, Senior
                                  Litigation Counsel, and Benjamin
                                  Vetter, Senior Counsel, on the
                                  brief), Washington, D.C.

Petition for Review of an Order of the Securities and Exchange Commission.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the petition for review is **DENIED**.

Bernard McGee appeals the final order of the Securities and Exchange Commission, Bernard G. McGee, Exchange Act Rel. No. 80314 (Mar. 27, 2017), sustaining disciplinary action by the Financial Industry Regulatory Authority, Inc. ("FINRA") against McGee for inducing a transaction and conducting business activities in violation of Section 10(b) of the Securities Exchange Act ("Exchange Act") and FINRA rules. See 15 U.S.C. § 78j. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Bernard McGee was registered as a general securities representative and principal with the FINRA member firm Cadaret, Grant, & Co., Inc. ("Cadaret"). According to FINRA's findings, starting around 2010 McGee developed a business relationship with James Griffin, the founder and CEO of a company called 54Freedom that offered charitable gift annuities ("CGAs"). McGee allegedly advised a client (known as "CF") to liquidate variable annuities valued at approximately $492,000 (about half of her divorce settlement), and to invest the proceeds in 54Freedom's CGAs. 54Freedom paid McGee a 10% commission ($49,264) for facilitating CF's investment. McGee failed to disclose the commission payment to CF or Cadaret, and did not inform his firm about his business relationship with 54Freedom. 54Freedom turned out to be a sham, and Griffin a fraud. CF lost about $200,000 of her investment, and an investigation prompted by CF's attorney led to McGee's resignation from Cadaret.

2

FINRA subsequently charged McGee with: (1) inducing CF to cash in variable annuities for a CGA, and failing to disclose the fee he would receive in connection with that transaction, in willful violation of Section 10(b) of the Exchange Act and FINRA Rules 2020 and 2010; (2) making an unsuitable recommendation to CF in violation of NASD Rule 2310 and FINRA Rule 2010; (3) failing to disclose his relationship with 54Freedom to his employment member firm, in violation of FINRA Rules 3270 and 2010; (4) failing to timely update his Form U4 to reflect his new office address, in violation of FINRA Rules 1122 and 2010; and (5) making misrepresentations on member-firm compliance questionnaires. The FINRA Hearing Panel found that FINRA proved the charged violations and ordered McGee to pay CF $237,643.25 in restitution, plus interest. It also barred McGee permanently from associating with any FINRA member firm.

The SEC sustained FINRA's findings and upheld the sanctions. We "affirm the SEC's findings of fact if supported by substantial evidence." VanCook v. SEC, 653 F.3d 130, 137 (2d Cir. 2011); 15 U.S.C. § 77i. "[W]e will set aside the SEC's actions, findings, or conclusions of law only if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" Mathis v. SEC, 671 F.3d 210, 216 (2d Cir. 2012) (quoting 5 U.S.C. § 706(2)(a)).

McGee first challenges the Commission's factual finding that he even made the recommendation to CF to liquidate her variable annuities and pursue 54Freedom CGAs. Relying on Griffin's exposure as a criminal and snippets of CF's testimony, McGee urges that it was Griffin who convinced CF to part with her variable annuities and invest in CGAs, and that in executing the transactions McGee was merely following his client's instructions.

Even if McGee's narrative were a "plausible alternative interpretation of the evidence," the question is whether substantial evidence supports the SEC's finding that McGee made the recommendation. Cablevision Sys. Corp. v. FCC, 570 F.3d 83, 92-93 (2d Cir. 2009); see Ill. Cent. R.R. Co. v. Norfolk & W. Ry. Co., 385 U.S. 57, 69 (1966) ("[T]he

3

possibility of drawing two inconsistent conclusions from the evidence" does not mean that the agency's findings are not supported by substantial evidence.) (internal quotation marks omitted).

The SEC's finding has sufficient support in the record. McGee relocated his offices to 54Freedom's premises in December 2010 in anticipation of a budding partnership. His assistant testified that around that time, McGee discussed how he had identified a client as a test case for 54Freedom's investment product; and McGee later acknowledged that he had "suggested" the 54Freedom CGA to CF as a way for her to accrue tax benefits. J. App'x at 140-44, 670-75. McGee proceeded to share 54Freedom's marketing materials with CF in January and February 2011. And in March 2011, McGee executed every step of the transaction by assisting CF with the surrender of her variable annuities and the delivery of her check to 54Freedom. The SEC could reasonably infer from this undisputed timeline that McGee made the recommendation. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Ill. Cent. R.R. Co., 385 U.S. at 69 (we leave undisturbed the SEC's "conclusions that are reasonably drawn from the evidence and findings in the case").

McGee argues that even if this Court sustains the finding that he made the CGA recommendation, the transaction did not violate Section 10(b) of the Exchange Act (or equivalent FINRA Rules) as a matter of law. He contends that the Exchange Act and FINRA rules are not implicated because CGAs are insurance products under New York law.[2] An individual violates Section 10(b) and Rule 10b-5 when he or she, "in connection with the purchase or sale of a security ... ma[kes] a material representation (or a material omission if the defendant had a duty to speak) or used a fraudulent device." VanCook, 653 F.3d at 138; see 17 C.F.R. § 240.10b-5 (2000); 15 U.S.C. § 78j.

---

[2] McGee characterizes his challenge to FINRA's ruling as "jurisdictional." Pet. Br. at 8, 10. But FINRA and the SEC have jurisdiction stemming from their statutory authority to "appropriately discipline[] their members." Fiero v. Fin. Indus. Regulatory Auth., Inc., 660 F.3d 569, 574 (2d Cir. 2011) (internal quotation marks omitted).

4

The omission or representation need only "coincide" with the purchase or sale of a security to satisfy the "in connection with" requirement.  SEC v. Zandford, 535 U.S. 813, 819 (2002).

McGee failed to disclose a substantial payment from the issuer of the CGAs (the 10% fee) made in exchange for facilitating the liquidation-to-purchase scheme.  A non-disclosure of this nature related to economic self-interest and made in the course of an investment recommendation is a material omission under the securities laws.  See Press v. Chemical Investment Servs. Corp., 166 F.3d 529, 534 (2d Cir. 1999) (defining the duty of a broker under Rule 10b-5 to disclose material information to a client in making an investment recommendation); In re Time Warner Inc. Secs. Litig., 9 F.3d 259, 264 (2d Cir. 1993) (same); see also Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1172 (2d Cir. 1970); United States v. Nouri, 711 F.3d 129, 142-43 (2d Cir. 2013).

Even if we accept McGee's contention that the 54Freedom CGAs were insurance products and not securities, the material omission of the commission payment occurred "in connection with" the sale of a security: CF's variable annuities.  See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 109 (2d Cir. 2001) (noting variable annuities of the kind surrendered here are securities products).  True, the material omission related to one stage of a multifaceted transaction and not the other.  But McGee does not escape the reach of Section 10(b) and FINRA rules.  While surrendering CF's variable annuities may have been "perfectly lawful" on its own, in this case it was integral to the reinvestment of the proceeds in a fraudulent manner.  Zandford, 535 U.S. at 819-20.

Substantial evidence also supports the SEC's findings that McGee violated FINRA's reporting requirements, failed to report his outside business activities, and made false statements on compliance questionnaires.  With respect to reporting requirements, a FINRA member must update the Form U4 within 30 days of a change in office location.  FINRA Rule 1122.  McGee testified on numerous occasions that he moved into the 54Freedom premises in early 2011.  See J. App'x at 313-18.  And it is undisputed that McGee did not

5

update his Form U4 to reflect a new office location until December 2011. It was reasonable for the agency to credit this testimony and find that more than a month had passed between McGee's relocation and the completion of the required form. McGee later offered different testimony about his business plan, but contradictory evidence does not foreclose the agency's conclusion. See Ill. Cent. R.R. Co., 385 U.S. at 69; Cablevision Sys. Corp., 570 F.3d at 92–93.

FINRA Rule 3270 requires that any registered person "provide[] prior written notice" to the member firm before becoming a partner or contractor of another person or being "compensated" or "hav[ing] the reasonable expectation or compensation" as a result of any outside business activity. FINRA Rule 3270. It is undisputed that McGee failed to provide written notice of his activities with 54Freedom to Cadaret, despite contemplating a joint venture with 54Freedom, opening an office on its premises, and receiving $59,264 from 54Freedom in outside commissions. Further, substantial evidence in the form of direct testimony from McGee and his assistant supported the SEC's conclusion that McGee used an email address to conduct securities business that he did not disclose in Cadaret's annual questionnaire. J. App'x at 160-161, 327-33, 557-61.

Lastly, McGee challenges FINRA's sanctions as excessive and oppressive. See 15 U.S.C. § 78s(e)(2). We "will not disturb the SEC's choice of sanction unless it is 'unwarranted in law or without justification in fact.'" Mathis, 671 F.3d at 216 (quoting VanCook, 653 F.3d at 137). The sanctions here are easily justified on this record. The SEC found that McGee's actions caused a substantial loss to his client. McGee so acted without regard to FINRA guidelines, and when the fraud was discovered, he attempted to conceal his conduct from his employer's investigation. That Griffin is responsible for additional, distinct fraudulent conduct does not absolve McGee of his own responsibility for these transactions. FINRA's award of restitution and imposition of a trading ban were not excessive or oppressive in light of the character of McGee's violations. See McCarthy v. SEC, 406 F.3d 179, 190 (2d Cir. 2005).

6

For the foregoing reasons, and finding no merit in McGee's other arguments, we hereby **DENY** the petition for review.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK